IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZHONG HUANG, | : | |
|     Petitioner | : | |
| | : | |
|     v. | : | CIVIL NO. 02-CV-3585 |
| | : | |
| JOHN ASHCROFT, | : | |
| UNITED STATES ATTORNEY | : | |
| GENERAL, *et al.*, | : | |
|     Respondents | : | |
| | : | |

GOVERNMENT'S RESPONSE TO PETITION FOR
WRIT OF HABEAS CORPUS

I. BACKGROUND

This is an alien habeas corpus case. The alien Zhong Huang ("Huang") and the government have stipulated that Huang entered the United States illegally some 12 years ago; that he filed an application for refugee status ("asylum") pursuant to 8 U.S.C. § 1158(a) sometime in the Summer of 1997, and that the asylum application was denied by the asylum officer. That official then placed Huang in removal proceedings by issuing a "Notice To Appear" or "NTA" against him on October 21, 1997.

Huang retained a lawyer, and appeared at his deportation hearing in New York in February 1998. Evidently the hearing was continued, and on July 16, 1998 the

Immigration Judge (IJ) granted Huang the privilege of "voluntary departure" in lieu of deportation until November 10, 1998, very near the statutory maximum of 120 days. See 8 U.S.C. § 1229c(a)(2).[1]

Huang did not depart, and the "alternate" order of removal became final after the expiration of the voluntary departure period (*i.e.* on November 11, 1998).

Huang then filed a "Motion to Reopen" with the Immigration Judge at New York, claiming that he was eligible for a form of relief from removal known as the "Torture Convention."[2] Motions to Reopen are authorized at 8 U.S.C.

---

[1] Section 240B(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229c(a)(1), provides that the Attorney General "may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 240 or prior to completion of such proceedings, if an alien is not deportable under section 237(A)(2)(A)(iii) (aggravated felony conviction) or section 237(a)(4)(B) (security and related grounds)." Such permission "shall not be valid for a period exceeding 120 days." Section 240B(a)(2) of the Act (8 U.S.C. § 1229c(a)(2)).

[2] The habeas petition, at ¶ 16, says that the New York attorney filed the motion to reopen based on Huang's February 15, 2000 marriage to an American citizen. That is apparently incorrect; the IJ's denial makes no mention of the marriage, only the Torture Convention claim, and the marriage preceded the IJ's

§ 1229a(c)(6). In a written order dated February 24, 2000, the IJ denied Huang's motion, holding that he had not demonstrated *prima facie* eligibility for withholding of removal under the Torture Convention. Huang had submitted no evidence that he would be "tortured" if returned to China, but merely posited some conclusory allegations to that effect. The IJ furnished Huang's attorney with written advice about how to perfect an appeal to the Board of Immigration Appeals (BIA). It appears that the denial of the Motion to Reopen was not appealed to the BIA. This denial is not a subject of the instant habeas petition.

      Huang took no steps to depart the United States in accordance with his final order of removal, nor did he advise the government of his whereabouts. A year after the denial of the motion to reopen, Huang's spouse filed an immediate relative petition (INS form I-130) with the district director at Philadelphia (Huang having removed to Lancaster, Pennsylvania). The I-130 petition, if approved, would accord Huang "immediate relative" status and permit him to obtain an immigrant visa ("green card"), although not

---

        final decision on the motion only by 10 days. The Joint Stipulation, ¶ 12, recites the correct facts relating to the motion.

necessarily in the United States and perhaps not immediately.

The I-130 petition was filed with the assistance of a lawyer, one Helen Wang Esq. This is not the same lawyer who represented Huang in the New York removal case. Ms. Wang checked a block on the I-130 form that indicated that petitioner would apply for "adjustment of status" at Philadelphia. Elsewhere she indicated on the petition that he had entered illegally in 1990 and had been in deportation proceedings in New York in 1997; the latter circumstance should have suggested that "adjustment" under 8 U.S.C. § 1255 might be precluded as a matter of law.[3]

Huang and his spouse were invited in for an interview at INS; upon his arrival, Huang was arrested pursuant to the final order of removal and ordered detained.

---

[3] Adjustment is wholly discretionary to the attorney General, see Ruckbi v. INS, 159 F.3d 18, 21 (1st Cir. 1998), and the Attorney General may decline to adjust an alien's status even if the alien is otherwise statutorily eligible. In such a case, the alien must depart and apply for a visa overseas. A legitimate reason to deny adjustment is an alien applicant's earlier contumely for the immigration laws. The decision to deny adjustment as a matter of discretion is not reviewable by the court, on habeas or otherwise; 8 U.S.C. § 1252(a)(2)(B)(i) (West 2001); see Prado v. Reno, 198 F.3d 286 (1st Cir. 1999).

Huang's present attorney (his third) filed the instant habeas petition on June 4, 2002. His contention on habeas is that the failure of Attorney Wang to file a form called an I-212 along with the I-130 immediate relative petition was ineffective assistance of counsel, because the Immigration & Naturalization Service could have considered and approved the I-212, thus rendering Huang eligible for "adjustment of status."[4]

II. <u>ARGUMENT</u>

On a habeas petition, this Court has jurisdiction to review Huang's final order of removal for legality; 28 U.S.C. § 2241(c)(3); <u>Chmakov v. Blackman</u>, 266 F.3d 210, 214 (3d Cir. 2001)("The Supreme Court has made it quite clear that there are two rationales in support of the conclusion that habeas is preserved for aliens subject to a final order of deportation")(emphasis added); <u>Bejacmar v. Ashcroft</u>, -F.3d -, 2002 WL 984193, *1 (11th Cir. May 14, 2002 ) (court has habeas jurisdiction over "final removal order").

This petition requires a dissection of various provisions of the Immigration & Nationality Act (INA), as

---

[4]  "Adjustment" means obtaining lawful permanent status in the United States without being required to obtain the immigrant visa overseas.

amended in 1996. The government addresses the constitutional issue first.

An alien has no Sixth Amendment right to counsel in a deportation case, see INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984) ("Consistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation hearing.") However, it is well established that the Fifth Amendment entitles an alien to due process of law in a removal proceeding. See Reno v. Flores, 507 U.S. 292, 306, (1993). To that end, Congress has provided a statutory right to counsel in deportation cases; see 8 U.S.C. § 1362 (1994) (providing for "privilege of being represented (at no expense to the Government) by counsel" chosen by alien); 8 U.S.C. § 1229a(b)(4)(A) ("alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings"); see also Michel v. INS, 206 F.3d 253, 258 (2d Cir. 2000) ("Under the Due Process Clause and the Immigration and Nationality Act, an alien is entitled to representation of his own choice at his own expense.")

Because it is a civil proceeding, the familiar <u>Strickland</u> standard does not apply to claims of ineffective assistance.[5] Rather, a somewhat lower standard of "fundamental fairness" is applicable. <u>See</u> <u>Iavorski v. USINS</u>, 232 F.3d 124, 128 (2d Cir. 2000) (effectiveness of counsel at deportation hearing reviewed for fundamental fairness). But the cases address the "fundamental fairness" of the removal case itself, and not essentially collateral applications for green cards after the deportation order is final. Nonetheless, the government will apply the most analogous circumstance, analyzing Huang's I-212 argument in light of caselaw relating to "motions to reopen."[6]

A deprivation of due process in the reopening context occurs if (a) competent counsel would have acted otherwise, and (b) the alien was prejudiced by counsel's performance. <u>Iavorski</u>, *supra,* 232 F.3d at 128; <u>Rabiu v. INS</u>, 41 F.3d 879, 882 (2d Cir. 1994). Prejudice is established by

---

[5] <u>Strickland v. Washington</u>, 466 U.S. 688 (1984).

[6] The analogy is that Huang wants INS to disregard his final order of removal and grant him legal permanent residence through "adjustment" based on a marriage entered into after his removal order became final; this is precisely the aim of most "motions to reopen."

showing that the result would have been different had counsel acted competently. Brito-DeLeon v. Ashcroft, 188 F.Supp.2d 340, 346 (S.D.N.Y. 2002). Huang's theory is that, but for his lawyer's failure to file a form I-212, the INS would have waived his deportation order and granted his application for permanent resident status.

Huang cannot establish that the "result would have been different" if the prior lawyer had filed the I-212.[7] This is because the statute providing for "voluntary departure" appears to rule out a subsequent adjustment of status by an alien who received voluntary departure and then refused to depart.

Prior to the 1996 amendments, the term "voluntary departure" described an amorphous concept in immigration law.[8] As noted in the margin below, before 1996 no one in

---

[7] The INS Form I-212 is styled "Application for Permission to Reapply for Admission into the United States after Deportation or Removal." It is authorized at 8 CFR § 212.2 (West 1998).

[8] The current "voluntary departure" law, § 1229c of Title 8, is otherwise referred to as Section 240B of the Immigration & Nationality Act (INA). Section 1229c (INA 240B) was added to the INA in 1996 as part of a major overhaul of the immigration laws; it replaced 8 U.S.C. § 1254(e)(West 1994), which provided a statutory basis for voluntary departure but placed no temporal limits on

-8-

the immigration business understood "voluntary departure" to mean that the alien would actually leave the country; the purpose of the concept was to allow aliens to pursue permanent residence without risking a deportation order. The 1996 revision reversed that concept completely, and was intended to make physical "departure" a concomitant to the privilege; any alien who applied for and received the grant was statutory ineligible, for a period of 10 years, for relief under various sections of the INA, including in Huang's case adjustment of status under 8 U.S.C. § 1255. See 8 U.S.C. § 1229c(d) and 8 CFR § 240.26(a).

Huang applied for adjustment of status under § 1255, and was denied, following his failure to depart voluntarily pursuant to § 1229c. It is his burden to establish how the prohibitory language in § 1229c(d) does

---

the grant. Prior to 1996, there was no limit on the number of extensions of voluntary departure, and indeed neither the alien nor the INS understood voluntary departure to impose any obligation on the concerned alien to depart; rather, the grant of voluntary departure was an invitation to continue to delay, or litigate against, expulsion without risking a final deportation order. Section 1229c changed all of that. Now there are serious consequences for willful failure to depart, including in this case a ten-year bar to adjustment of status even if a visa is available; 8 U.S.C. § 1229c(d).

not apply to him, or why the statutory preclusion in 8 U.S.C. § 1229c(d) could nonetheless be waived by the INS in his case. Huang alleges that somehow an application on form I-212 might have made a difference; cf. 8 CFR § 212.2(e), but the statute and the Attorney General's regulation (at 8 CFR § 240.26(a)) seem conclusive on that point.[9]

Because the INS acted in conformity with a clearly written statute barring adjustment of status to Huang, the petitioner has not established that the result would have been different if prior counsel had filed an I-212

---

[9] The regulation says: Voluntary departure--authority of the Executive Office for Immigration Review.
 (a) Eligibility: general. An alien previously granted voluntary departure under section 240B of the Act, including by the Service under § 240.25, and who fails to depart voluntarily within the time specified, shall thereafter be ineligible, for a period of ten years, for voluntary departure or for relief under sections 240A, 245 (8 U.S.C. § 1255], 248, and 249 of the Act.
8 CFR § 240.26 (West 2000). And see In re Arguelles-Campos, Int. Dec. 3399, 1999 WL 360383 (BIA Jun. 7, 1999) ("if an alien is permitted to depart voluntarily under section 240B and fails to depart the United States within the time period specified, the alien shall be subject to a civil penalty of $1,000 to $5,000 and be ineligible for relief of cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant classification, and registry for a 10-year period.")

application along with his application for permanent residence. Huang has not even established that the result "could" have been different; Petition, ¶ 20. Because the result would not have been different, Huang has failed to establish ineffective assistance of counsel and the petition must be dismissed.

III. <u>CONCLUSION</u>

For the foregoing reasons the petition must be dismissed.

Respectfully,

PATRICK L. MEEHAN
United States Attorney

_____
JAMES G. SHEEHAN
Assistant United States Attorney
Chief, Civil Division

_____
STEPHEN J. BRITT
Assistant United States Attorney

*Certificate of Service*

I certify hereby that on the 17th Day of July, 2002, I personally served or caused to be served a copy of the attached Government's Answer To Petition For Writ Of Habeas Corpus, addressed to:

>Michael S. Henry, Esq.
>1163 South 11th Street
>Philadelphia, PA   19147- 4624
>
>*Attorney for petitioner,*

by first class mail service upon counsel.

>_____
>STEPHEN J. BRITT
>Assistant United States Attorney
>Suite 1250, 615 Chestnut Street
>Philadelphia, PA 19106-4476
>(215) 861-8443
>(215) 861-8642  telecopier